UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 10-20698-SEITZ/O'SULLIVAN

KELLY PHILLIPS, LUISA GINSBERG,
CRISTINA PARET, YAHILIN CHIRINO,
and all other similarly situated under 29 U.S.C.
216(B)

    Plaintiffs,

v.

M.I. QUALITY LAWN MAINTENANCE, INC.,
MITCHELL'S LAWN MAINTENANCE CORP.,
and MITCHELL IGELKO,

    Defendants.
_____/

## ORDER GRANTING IN-PART AND DENYING IN-PART DEFENDANTS' MOTION TO DISMISS STATE LAW MINIMUM WAGE CLAIMS, COUNT II, AND COUNT III

    THIS MATTER is before the Court on Defendants' Motion To Dismiss [DE-6]. This is an action under the Fair Labor Standards Act ("FLSA") and the Florida Constitution for unpaid minimum wages, overtime pay, and, for two of the Plaintiffs, retaliation against those Plaintiffs for attempting to opt in to a related FLSA action against the same Defendants. Defendants move to dismiss the following claims: (1) Plaintiffs' state law claim for unpaid minimum wages because of Plaintiffs' purported failure to adhere to Florida's pre-suit notice requirement, and (2) Plaintiffs' two retaliation claims on the ground that Plaintiffs were not employed with Defendants at the time they brought their suit and could not have incurred an adverse action because of Defendants' conduct. Defendants' Motion is well-taken to the extent that three of the Plaintiffs have not submitted adequate pre-suit notice of their minimum wage claims, but the Court will afford those Plaintiffs an opportunity to submit the required notice and replead. Defendants' Motion with respect to the

retaliation claims will be denied because the FLSA's retaliation provision protects former employees, and both Plaintiffs have alleged conduct that could deter a reasonable person from enforcing their FLSA rights. However, the Court will require a more definite statement as to Count III.

I.    **BACKGROUND FACTS**

Defendants employed each of the four Plaintiffs as office workers. (Complaint at ¶ 14). All four claim that Defendants violated state and federal law by failing to compensate them with either or both required minimum wages or overtime pay. Additionally, two of them assert FLSA retaliation claims.

Plaintiff Kelly Phillips ("Phillips") was initially hired as a "secretary helper," then became a full time secretary. (Complaint at ¶ 14). She was later given the title of comptroller, though Plaintiffs allege she only had that title "in name only." (*Id.*). Phillips worked for Defendants from March 2003 through early August 2009 at a rate of $19.50 per hour. (*Id.* at ¶ 17). She claims she was not paid at all for the average of five hours of overtime she worked between August 2006 and February 2008, and was not paid for at least 2.5 hours of standard work[1] for each week between February 2008 and August 2009. (*Id.*).

In August 26, 2009, after she was no longer employed by Defendant, Phillips attempted to opt in to a related action against the Defendants, *Melgar v. M.I. Quality Lawn Maintenance*, 09-22243-cv-PAS. (*Id.* at ¶ 21).[2] On December 10, 2009, Defendant Mitchell's Lawn Maintenance ("Mitchell's") sued Phillips in state court for the return of materials that Mitchell's claimed Phillips

---

[1] The Court will use the term "standard work" to refer to work performed within a 40-hour work week.

[2] On February 17, 2010, the Court entered an Order [09-cv-22243, DE-49] denying the *Melgar* plaintiffs' attempt to amend their complaint to join Phillips and other plaintiffs who were not lawn men.

took from Defendants' premises upon termination of her employment. (*Id.* at ¶ 22). Phillips claims that Mitchell's has no basis for asserting the claim and that the lawsuit was brought simply as retaliation for Phillips's attempt to opt in to *Melgar*. (*Id.* at ¶¶ 24-25).

Plaintiff Luisa Ginsberg ("Ginsburg") worked for Defendants as a secretary. (*Id.* at ¶ 14). Ginsberg worked for Defendants from July 2006 through August 2007, making between twelve dollars and fifteen dollars an hour during her tenure. (*Id.* at ¶ 16). However, she worked an average of 48 hours a week and was not compensated at all for the 8 overtime hours of work she performed each week. (*Id.*).    Ginsberg also attempted to opt in to the *Melgar* action after she was no longer employed by the Defendants. (*Id.* at ¶ 28). She claims that Defendant Mitchell Igelko ("Igelko") retaliated against her for asserting a claim for overtime wages by harassing her about a loan that Ginsberg had already repaid through deductions in her paycheck during Ginsberg's tenure with Defendants. (*Id.* at ¶ 29).

Defendants employed Plaintiff Yahilin Chirino ("Chirino") as a secretary from October 24, 2005 through February 10, 2009. (*Id.* at ¶¶ 14-15). She received compensation at a rate of either ten or eleven dollars an hour during this time, but was never compensated for 7.5 hours of standard work in each week of her tenure. (*Id.* at ¶ 15).

Finally, Defendants employed Plaintiff Cristina Paret ("Paret") to work on their accounts payable. (*Id.* at ¶ 14). Paret alleges that between March 2008 and December 2008 she was not paid for 5 hours of standard work per week. (*Id.* at ¶ 18).

Plaintiffs' Complaint asserts three counts. Count I alleges Defendants violated the FLSA and the Florida Constitution by failing to provide Plaintiffs with required minimum and overtime wages. Count II alleges that Mitchell's violated the FLSA's anti-retaliation provision when it

brought a baseless lawsuit against Phillips, motivated by Phillips's attempt to assert a claim for overtime wages. Count III alleges that Igelko violated the same provision when he sent Ginsburg letters and confronted her at her workplace about an unpaid in order to retaliate against her for attempting to pursue an FLSA claim against the Defendants. Defendants move to dismiss the part of Count I seeking minimum wages under the Florida Constitution because of Plaintiffs' purported failure to follow Florida's related pre-suit notice requirement, and both Counts of FLSA retaliation claims on the grounds that neither Phillips nor Ginsburg can pursue a retaliation claim as former employees of the Defendants and because they fail to plead sufficient facts to support their claims.

## II.    STANDARD OF REVIEW

The purpose of a motion filed pursuant to Fed. R. Civ. P. 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." Although a complaint challenged by a Rule 12 (b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Taking the facts as true, a court may grant a motion to dismiss only if no construction of the factual allegations will support the cause of action. *Marhsall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). A well-pled complaint survives a motion to dismiss

"even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## III. ANALYSIS

### A. Minimum Wage Claims

Defendants move to dismiss Plaintiffs' minimum wage claims pursuant to Section 24, Article X of the Florida Constitution on the ground that Plaintiffs' have not complied with the pre-suit notice requirements of Fla. Stat. § 448.110, which states in relevant part that

> prior to bringing any claim for unpaid minimum wages pursuant to this section, the person aggrieved shall notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action. The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work date and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice.

Fla. Stat. § 448.110(6)(a).[3]

On September 1, 2009, Plaintiffs' counsel sent Defendants' prior counsel in the *Melgar* suit a notice ("Notice") that Plaintiffs were pursuing claims for unpaid minimum wages for Plaintiffs Chirino and Paret, and for other plaintiffs not participating in this case. The unpaid wages identified in the Notice for Paret are identical to those claimed in the Plaintiffs' Complaint. However, the Notice does not identify unpaid wages for Chirino that were to be paid between Chirino's start of employment on October 24, 2005 through August 26, 2006, and Chirino now alleges she was not paid a minimum wage during that time period for 7.5 hours a week. Moreover, the Notice does not mention Phillips or Ginsberg at all.

Plaintiffs argue that Defendants' Motion should be denied because of the Notice and because

---

[3] Under § 440.110(6)(b), an employer has 15 calendar days after receipt of the notice to pay the total amount of unpaid wages or otherwise resolve the claim the satisfaction of the person aggrieve.

Phillips's minimum wage claim was presented to Defendants in August of 2009 when she tried to join the *Melgar* action. While the *Melgar* plaintiffs did file a Statement of Claim [09-cv-22243, DE-11] on August 26, 2009 identifying Phillips's uncompensated overtime pay, the Statement of Claim did *not* identify uncompensated minimum wages for Phillips.

As a result, the Court finds that Plaintiffs can presently pursue their state law claim for unpaid minimum wages identified for Chirino and Peret in the September 1, 2009 Notice, but are currently precluded from litigating that claim for Phillips and Ginsberg (and Chirino to the extent the Complaint alleges unpaid minimum wages not identified in the Notice) because they have not complied with § 448.110(6)(a)'s requirement that they submit a pre-suit notice to Defendants before filing their claim. However, the Court will grant Defendants' motion without prejudice, and afford Plaintiffs a short period of time to send written notice and file an Amended Complaint consistent with their written notice.[4]

### B. Retaliation Claims

Defendants also claim that Phillips's and Ginsburg's FLSA retaliation claims should be dismissed because they allege Defendant's retaliated against them when they were former employees and, as a result, cannot have incurred an adverse employment action. 29 U.S.C. 215(A)(3) makes it unlawful for a business covered by the FLSA to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or

---

[4] While courts in the Middle District of Florida have found that § 448.110(6)(a)'s pre-suit notice provision violates the Florida Constitution by imposing a qualification on a constitutional right, *see, e.g., Throw v. Republic Enterp. Sys.*, 2006 WL 1823783, at *2 (M.D. Fla. Jun. 30, 2006), Plaintiffs have not argued that the provision is unconstitutional. Moreover, the Court agrees with the courts in the Southern District of Florida who have found the pre-suit notice provision is not unconstitutional because it only encourages prompt resolution of wage disputes and fully protects the right of works to full compensation. *See, e.g., Resnick v. Oppenheimer & Co. Inc.*, 2008 WL 113665, at *3 (S.D. Fla. Jan. 8, 2008); *Dominguez v. Design By Nature Corp.*, 2008 WL 4426721, at *2 (S.D. Fla. Sept. 25, 2008).

instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000).

Defendants raise the threshold objection that Phillips and Ginsberg cannot assert an FLSA retaliation claim because both were former employees at the time they brought their claims, not current employees. According to Defendants, the FLSA's proscription of discrimination against "any employee" affords the right to bring a retaliation claim only to current employees. The FLSA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).

A number of courts have rejected Defendants' argument, holding that the term "employee" in § 215(A)(3) must include former employees because"[t]here is nothing in the language or history" of the FLSA "to indicate that Congress intended to penalize dissatisfied employees who voluntarily leave an employer," and this class of employees may be subject to retaliation either from new employers who learn an employee has challenged the labor practices of a previous employer, or from a former employer should the employee need to return for a reference or some other reason. *Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008); *see also, Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1406-08 (10th Cir. 1992); *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 147 (6th Cir. 1977).[5] The Court agrees with the analysis of these decisions, especially in light of the

---

[5] While the Eleventh Circuit Court of Appeals has not had to directly address whether a former employee can bring an FLSA retaliation claim, it has clearly stated that former employees should be entitled to the same protection as current employees under FLSA and other labor discrimination laws. The Court of Appeals relied on *Dunlop* in *Smith v. Bellsouth Telecommunications, Inc.*, 273 F.3d 1303 (11th Cir. 2001), where it held that the definition of "employee" under the Family and Medical Leave Act encompassed former employees, and noted that

Eleventh Circuit's recognition of the need to protect former employees from retaliatory conduct, *see* note 1 *infra,* and United States Supreme Court's expansive interpretation of the term "employee" in *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).[6] Accordingly, it will reject Defendants' argument that the retaliation claims must be dismissed because Plaintiffs are former employees and move on to address whether the allegations of the Complaint satisfy the elements for an FLSA retaliation claim listed above.

Defendants do not dispute that Plaintiffs satisfy the first and third elements for an FLSA retaliation claim, but argue that Mitchell's cannot have taken an adverse employment action against Phillips and Ginsburg because they were no longer employed with Mitchell's at the time the conduct in question took place. However, an employer's retaliation against an employee need not be limited to conduct related to employment or occurring at the workplace to be actionable. *See Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53 (2006).[7] As a result, the Defendants' blanket objection

---

Congress incorporated the FLSA definition of "employee" into the FMLA. Additionally, in addressing whether former employees who assisted in an FLSA investigation should be protected under the informer's privilege, the former Fifth Circuit Court of Appeals stated that "there is no ground for affording any less protection to defendant's former employees than to its present employees." *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.*, 459 F.2d 303, 306 (5th Cir. 1972).

[6] In *Robinson*, the Supreme Court had to determine whether Title VII of the Civil Rights Act of 1964, which similarly defines an "employee" as an "individual employed by an employer," afforded protection to former employees as well as current employees. The Supreme Court held that the term included former employees, thereby permitting former employees to sue for allegedly retaliatory postemployment actions. While the court recognized that it might seem natural to read the term "employee" to mean only current employees, an accurate reading of the definition is "consistent with either current or past employment." 519 U.S. at 341-342.

[7] In *Burlington Northern,* the United States Supreme Court held that the scope of Title VII's anti-retaliation provision "extends beyond workplace-related or employment-related retaliatory acts and harm" and rejected the position previously taken by many Courts of Appeals that actionable retaliation could only occur in the form of an "ultimate employment decision." 548 U.S. at 68. "Under the holding of *Burlington [Northern]*, the type of employer conduct considered actionable has been broadened from that which adversely effects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or workplace-related." *Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008). While *Burlington Northern* was decided in the Title VII context, courts routinely examine FLSA retaliation claims under the same standards as Title VII retaliation claims. *See, e.g., Munroe v. Partsbase, Inc.*, 2009 WL 413721, at *7 (S.D. Fla. Feb. 18, 2009) ("FLSA retaliation claims are governed by the same legal analysis applicable to retaliation claims under Title VII"); *Sabatier v. Suntrust Bank*, 2008 WL 108796, at **6-7 (S.D. Fla. Jan. 4, 2008)

that Plaintiffs could not have been subject to an adverse action is misguided.

Instead, the Court must decide whether the conduct alleged "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68. Phillips's allegation that Mitchell filed a baseless lawsuit in retaliation for her attempt to opt in to a related FLSA action against the Defendants clearly satisfies this standard. Courts routinely find that an employer can violate FLSA's anti-retaliation provision by filing a lawsuit against an employee with a retaliatory motive and without a reasonable basis in fact or law. *See Darveau*, 515 F.3d at 343; *Munroe*, 2009 U.S. Dist. LEXIS 15801, at *23 (to prevail, plaintiff must establish that lawsuit was (1) filed for a retaliatory motive and (2) lacked a reasonable basis in fact or law). Here, where Phillips has alleged that Defendants have no basis for their claim, have not produced any evidence in support and have filed their lawsuit to harass Phillips because she attempted to assert a claim for overtime wages, Phillips has adequately pled an FLSA retaliation claim.

It is a closer question with Ginsberg's retaliation claim. Her allegations that Igelko harassed Ginsberg "by sending letters and visiting [Ginsberg at her] new job attempting to collect on a loan ... which has already been repaid through deductions in [Ginsburg's] weekly paycheck", taken in a light most favorable to Ginsburg, could also be sufficient to allow her retaliation claim to survive a motion to dismiss. *See Crawford*, 529 F.3d at 974 n.13 ("it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse'). The Court is mindful that a plaintiff must allege an adverse action that is material to a reasonable person and that an employee's decision to pursue an FLSA action "cannot immunize that employee from those petty slights or minor annoyances ... that all employees experience."

---

(applying *Burlington Northern*'s standard to an FLSA claim).

Page 9 of 11

*Burlington Northern*, 548 U.S. at 68.

However, because the allegations about Igelko's conduct are very general, it is not perfectly clear that Igelko's confrontation of Ginsburg on the premises of her new place of employment is conduct that rises above the level of non-actionable "petty slights" to conduct creating a more than *de minimus* harm to Ginsburg's future employment. *See Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004) (conduct that does more than *de minimus* harm to plaintiff's future employment prospects can be regarded as adverse action even where plaintiff does not show the act precluded a particular prospect); *Campbell-Thomson v. Cox Comms.*, 2010 WL 1814844, at *10 (D. Ariz. May 4, 2010) (negative references can serve as grounds for retaliation claim even if a future employer does not base hiring decision on the poor reference); *Forsberg v. Pefanis*, WL 901015, at **14-15 (N.D. Ga. Jan. 26, 2009), *rev'd on other grounds*, 2009 WL 901015 (following *Burlington Northern*, evidence of post-employment blacklisting and attempts to destroy plaintiff's reputation are actionable even if there is no evidence that future employment was terminated as a result). To ensure the Complaint is clear as to the facts supporting Ginsburg's claim that she was reasonably dissuaded from pursuing an FLSA claim, the Court will require Ginsburg to amend her retaliation claim with a more definite statement as to Igelko's conduct and its potential to harm her future employment prospects. Having carefully considered Defendants' Motion To Dismiss, it is hereby

ORDERED THAT

(1) Defendants' Motion To Dismiss [DE-6] is GRANTED IN-PART and DENIED IN-PART. Their Motion is granted to the extent that Phillips, Ginsburg and, in part, Chirino, have not complied with Florida's pre-suit notice requirement for a claim for minimum wages under the Florida Constitution. However, it is denied to the extent that Paret has complied with the applicable

pre-suit notice requirement. Moreover, Defendants' Motion is denied as to the FLSA retaliation claims alleged in Count II and Count III of the Complaint, but the Court will require a more definite statement as to Count III.

(2) Plaintiffs shall file an Amended Complaint no later than **November 19, 2010** repleading (1) with a more definite statement, Ginsburg's FLSA retaliation claim; and, (2) the minimum wage claims previously asserted for Chirino, Phillips, and Ginsburg if they have complied with Fla. Stat. § 448.110's pre-suit notice requirement by that time and have allowed Defendants 15 calendar days to respond.

(3) Though discovery is scheduled to close on November 15, 2010 [DE-25], the Court will not currently extend discovery deadlines on the assumption that the Parties have been taking all discovery necessary to litigate both the state law minimum wage claim and the retaliation claims. The Parties shall request a brief extension as soon possible if they believe good cause exists to extend the discovery deadline for Plaintiffs' minimum wage claim under the Florida Constitution or their retaliation claims.

DONE AND ORDERED in Miami, Florida, this 21st day of October, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge O'Sullivan
All Counsel of Record