UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-20698-CIV-SEITZ/O'SULLIVAN

KELLY PHILLIPS, *et al.*,

      Plaintiffs,

vs.

M.I. QUALITY LAWN
MAINTENANCE, INC., *et al.*,

      Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Partial Summary Judgment [DE-41], in which Defendants seek summary judgment on Plaintiffs' minimum wage claims, Plaintiff Ginsberg's retaliation claim, and Plaintiff Phillips' retaliation claim. This action arises from Plaintiffs' claims that: (1) Defendants failed to pay overtime and minimum wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-209 (FLSA), and the Florida Constitution; (2) Plaintiff Phillips was fired in retaliation for seeking to enforce her rights to minimum wage and overtime, in violation of § 215(A)(3) of the FLSA; and (3) Plaintiff Ginsberg was also retaliated against, in violation of § 215(A)(3). The Court has reviewed the record evidence in the light most favorable to Plaintiffs and finds that Defendants are entitled to summary judgment as a matter of law because Ginsberg did not suffer any retaliation, the lawsuit against Phillips is protected by the Florida litigation privilege, and the Plaintiffs were paid an average hourly rate greater than the minimum wage. Thus, Defendants' Motion for Partial Summary Judgment is granted.

## I. Undisputed Material Facts

The Amended Complaint alleges three counts. Count 1 alleges that Plaintiffs, Phillips, Ginsberg, Chirino, and Paret,[1] were not paid overtime, in violation of the FLSA, and were not paid minimum wage in violation of the FLSA and the Florida Constitution. In Count 2, Plaintiff Phillips alleges that, after she sought to enforce her rights to the unpaid overtime and minimum wages, Defendants filed a lawsuit against her in Florida state court, seeking the return of documents, in retaliation for enforcing her rights and in violation of the FLSA. In Count 3, Plaintiff Ginsberg alleges that, after she sought to enforce her rights, Defendant Igelko harassed her at her place of work and otherwise caused her problems with her new employer, in retaliation for enforcing her rights and in violation of the FLSA. Neither retaliation claim is based on a claim of unlawful termination. Plaintiffs have sued two corporate entities and the individual owner of both the corporations. Plaintiffs have not noted any objections to any facts in Defendants' Statement of Undisputed Material Facts, DE-42.

Phillips did office work for Defendants under the title of Comptroller. She testified that her hours fluctuated during the time she worked for Defendants. (Phillips Dep.[2] 35:3-11.) During her time working for Defendants, Phillips always punched a time clock. (*Id.* at 36:4-37:2.) Phillips alleges that she was not paid for 2 ½ hours of time every week. (*Id.* at 43:4-45:7.) According to Phillips, Defendants would round down the time she worked everyday. (*Id.* at 76:4-77:11.) In other words, if Phillips punched out at 12:18, in calculating the time for which

---

[1] Paret was dismissed, by earlier Court Order, for failure to appear at Court ordered mediation. *See* DE-66.

[2] Phillips Dep. refers to the deposition of Plaintiff Kelly Phillips filed at DE-42-1.

she would actually be paid, Defendants would round down to 12:00. (*Id.*) By the time she left Defendants' employ, on August 3, 2009, Phillips was paid $19.50 per hour. (*Id.* at 88:11-14.) According to the Amended Complaint, Phillips attempted to opt-in to another FLSA lawsuit on August 6, 2009. (Am. Compl. ¶22.) Thereafter, on December 12, 2009, Defendant Mitchell's Lawn Maintenance Corp. filed a lawsuit against her in Florida state court, which sought the return of materials Defendants allege that Phillips took from Defendants' premises when she left their employment.[3] (*Id.* at ¶23.) The Amended Complaint alleges that the Florida state court lawsuit is baseless and was filed in retaliation for Phillips' attempt to opt-in to the other FLSA lawsuit.

Chirino, who also worked in the office, testified that when she started working for Defendants, in October 2005, she was paid $11 per hour. (Chirino Dep.[4] 9:3-4.) However, from 2008 forward she was paid $9 per hour. (*Id.* at 9:12-15.) Chrirno worked from 8:30 to 5 and did not take a lunch break. (*Id.* at 9:20-25.) Chirino punched a time clock every day. (*Id.* at 13:2-5.)

Ginsberg, another office employee, worked for Defendants from June 2006 through July or August 2007. (Ginsberg Dep.[5] 6:4-6.) Ginsberg testified that she worked approximately 47 hours per week and never took a lunch break. (*Id.* at 8:5-21.) Ginsberg personally punched in and out everyday. (*Id.* at 11:24-12:2.) Ginsberg's husband took out a loan from Defendant

---

[3]None of the parties have filed a copy of the state court complaint in the instant case. Therefore, the Court does not know what the causes of action are in that suit. Counsel in the state court case are not the same as counsel in the instant case. Therefore, neither counsel in the instant case appears to actually know the status of the state court case.

[4]Chirino Dep. refers to the deposition of Yahilin Chirino filed at DE-42-4.

[5]Ginsberg Dep. refers to the deposition of Luisa Ginsberg filed at DE-42-5.

Igelko, on which Ginsberg would make payments after getting paid. (*Id.* at 12:8-19.) After Ginsberg left Defendants' employ, Igelko showed up at her new place of employment looking for her and told Ginsberg's boss that she owed him money. (*Id.* at 14:17-15:8.) As a result, Ginsberg was stressed and embarrassed, but her employer did not take any adverse action against her. (*Id.* at 15:14-16:2.) Another employee of Defendants also came to Ginsberg's new place of employment with papers regarding the loan. (*Id.* at 19:21-20:10.) Although Ginsberg testified that she believed that the loan had been paid off by the time she left Defendants' employ (*id.* at 14:6-7), Ginsberg's husband signed a document on August 10, 2007 acknowledging that there remained an unpaid balance of $1,395.00 on the loan (Exhibit 16 to Defendants' Motion for Summary Judgment).

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

**III. Analysis**

*1. Defendants Are Entitled to Summary Judgment on Plaintiffs' FLSA Minimum Wage Claims*

Plaintiffs allege that they were not paid for some of the hours worked and are thus entitled to minimum wage for those unpaid hours. Defendants move for summary judgment on Plaintiffs' minimum wage claims, brought pursuant to the FLSA, because Plaintiffs' hourly rates were greater than minimum wage and, even if they were not paid for all hours worked, their average wage for the hours they worked exceeded minimum wage. The parties do not dispute that each Plaintiff was paid an hourly wage that exceeded minimum wage and that Plaintiffs' average wages for all hours worked exceeded the minimum wage. Further, Defendants do not appear to dispute, at least for purposes of this motion, that Plaintiffs were not paid for some of the hours that they worked less than and up to 40 per week. Thus, the issue is whether a party is entitled to minimum wage for unpaid work when his or her average hourly rate, including the unpaid hours, was greater than minimum wage.

5

While the Eleventh Circuit does not appear to have addressed the issue, the courts that have addressed it have held that the minimum wage requirements of the FLSA have been met if the total wage paid each week divided by the total time worked that week is greater than the minimum wage. *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969) (relying on *Klinghoffer*); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986) (quoting *Klinghoffer*); *Bolick v. Brevard County Sheriff's Dep't*, 937 F. Supp. 1560, 1568 (M.D. Fla. 1996). Plaintiffs do not dispute that their average hourly rates for all hours actually worked exceed the minimum wage. Thus, under this line of cases, Plaintiffs do not have minimum wage claims under the FLSA.[6]

Plaintiffs, relying on *Klinghoffer*, point to language that indicates that they are entitled to recover. However, Plaintiffs' reliance on this language is misplaced because the language comes from an order on rehearing and the court referenced, without citing, a line of cases one of the parties had cited but stated that it "find[s] it unnecessary now to pass final judgment on this line of cases" because the cases were sufficiently distinguishable. *Klinghoffer*, 285 F.2d at 494. Thus, the discussion is not part of the court's holding in *Klinghoffer*. Plaintiffs also rely on two sections of the Code of Federal Regulations, 29 C.F.R. §§ 778.110(a) and 778.322. However, neither section is actually applicable because both come from the regulations addressing overtime. Section 778.110(a) simply explains how an employee's overtime rate is calculated

---

[6] Plaintiffs argue that if the Court follows this line of cases Defendants would be allowed to simply not pay Plaintiffs for hours they worked because Plaintiffs' average pay was greater than the minimum wage and Plaintiffs would have no legal recourse. This is not accurate. While Plaintiffs may not have minimum wage claims under the FLSA for such behavior, Plaintiffs may have other causes of action available to them to recover for the unpaid work hours.

based on the employee's regular hourly rate. Section 778.322 is also part of the overtime regulations and deals with changes in a fixed workweek for which a salary, not an hourly rate, is paid. Thus, Plaintiffs have provided no applicable authority to support their arguments. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' FLSA minimum wage claims.

*2. Summary Judgment is Granted to Defendants on Ginsberg's Retaliation Claim*

The Amended Complaint alleges that after Plaintiff Ginsberg attempted to opt-in to another suit to assert her FLSA rights, Defendant Igelko began harassing her by attempting to collect a loan that had been made to Ginsberg's husband. Thus, Ginsberg asserts a claim for retaliation against Defendants. Defendants argue that Plaintiff Ginsberg's retaliation claim should be dismissed because no adverse employment action was taken against her after she asserted her rights.

In order to establish a claim for retaliation under the FLSA, a plaintiff must show: "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000) (quoting *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997)). Ginsberg argues that Defendants harassed and intimidated her in attempting to collect the unpaid loan. However, Ginsberg has failed to demonstrate how this conduct amounts to an adverse employment action. First, Ginsberg was no longer working for Defendants. Second, Ginsberg testified that her employer at the time of the collection attempts did not take any adverse action against her as a result of Igelko and an employee of Defendants showing up at her place of employment. Thus,

Defendants' actions did not affect Ginsberg's past or present employment. The case relied on by Ginsberg, *Johnston v. Davis Security, Inc.*, 217 F. Supp. 2d 1224, 1229 (D. Utah 2002), besides being non-binding, is inapposite because in that case the plaintiff's former employer made calls to her current employer in an effort to affect her future employment, which caused her employer to view her negatively and not to believe her side of the story. Here, Igelko did not contact Ginsberg's new employer; he contacted her. Furthermore, Ginsberg's testimony indicates that her new employer sided with her, not Igleko. Consequently, Ginsberg has failed to establish that she suffered an adverse employment action. Accordingly, summary judgment is granted to Defendants on this claim

*3. Summary Judgment is Granted to Defendants on Phillips' Retaliation Claim*

The Amended Complaint alleges that more than three months after Plaintiff Phillips attempted to opt-in to another FLSA action, Defendants retaliated against her by filing a lawsuit against her in Florida state court. The lawsuit sought the return of materials Defendants allege that Phillips took from Defendants' premises when she left her employment. The Amended Complaint further alleges that Defendants have no proof that Phillips took any documents and thus the suit was filed solely because Phillips asserted her rights under the FLSA. Defendants seek summary judgment on Phillips' claim of retaliation because Defendants' actions in filing suit are protected by Florida's litigation privilege.[7]

In *Kentish v. Madahcom, Inc.*, the district court addressed the interplay between the petition clause of the First Amendment and Florida's litigation privilege and found that Florida's

---

[7]The Florida litigation privilege is founded on Article 1, Section 21 of the Florida Constitution, which establishes the constitutional right of access to the courts.

litigation privilege was broader than the petition clause and covers all acts related to and occurring within judicial proceedings. 566 F. Supp. 2d 1343, 1348 (M.D. Fla. 2008) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Insurance Co.*, 639 So. 2d 606, 607-08 (Fla. 1994); *Fridovich v. Fridovich*, 598 So. 2d 65, 66 (Fla. 1992)). Thus, the court determined that it need not determine whether the claim at issue had a reasonable basis in fact, as would be required under the petition clause. *Id.* at 1349. The court further noted that a court's sanction authority can be used to address actions filed without a reasonable basis. *Id.* Given the broad reach of Florida's litigation privilege, the filing of Defendants' state court lawsuit against Phillips is protected action and, thus, cannot be the basis of a retaliation claim.

Plaintiffs cite to the Supreme Court decision in *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983), to support their position. *Bill Johnson's* addresses the petition clause under the First Amendment. However, because the Florida litigation privilege is broader than the petition clause, as set out above, Plaintiffs' reliance on *Bill Johnson's* is misplaced.[8] Furthermore, Plaintiffs have failed to address the effect of the broader Florida litigation privilege, which protects Defendants' filing of the state court lawsuit. As the court noted in *Kentish*, if the Florida lawsuit truly is baseless, Phillips can seek relief by asking the state court to impose sanctions on Defendants. Thus, the Defendants are entitled to summary judgment on Phillips' retaliation claim.

Accordingly, it is hereby

---

[8]Additionally, in *Bill Johnson's*, the actions which formed the basis of the employer's state court lawsuit were actions which the employees believed were protected by the federal labor statutes. In this case, the actions which form the basis of Defendants' state court lawsuit – Phillips' alleged taking of company documents – are not actions that are protected by any statute.

ORDERED that Defendants' Motion for Partial Summary Judgment [DE-41] is GRANTED.

DONE and ORDERED in Miami, Florida, this 30th day of March, 2011.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record